**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

NICHOLAS QUINTANA,

                                        Plaintiff,

           - v -                                              Civ. No. 9:03-CV-924
                                                                 (TJM/RFT)
JOSEPH E. MCCOY; C.O. PETER;[1] MR. COSTELLO,
Correctional Facility Mail Clerk at Cayuga Correctional
Facility; and PAMELA QUILL, Correctional Facility
Inmate Accounts at Cayuga Correctional Facility

                                        Defendants.


**APPEARANCES:**                                         **OF COUNSEL:**

NICHOLAS QUINTANA
Plaintiff, *Pro Se*
812 Riverside Drive #55
New York, NY 10032

HON. ELIOT SPITZER                                       SENTA B. SIUDA, ESQ.
Attorney General for the State of New York               Assistant Attorney General
Attorney for Defendants
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

                    **REPORT-RECOMMENDATION and ORDER**

        *Pro se* Plaintiff Nicholas Quintana brings a civil action pursuant to 42 U.S.C. § 1983,

alleging verbal harassment and tampering with his food in violation of the Eighth Amendment,[2]

---

    [1] Plaintiff mistakenly spells Defendant Peters' name as "Peter."  *See* Dkt. No. 46, Defs.' Mem. of Law at p. 1
n.1.  The Court will refer to this Defendant by the proper spelling.

    [2] Plaintiff makes factual allegations that Defendant Peters tampered with his food.  Although it is unclear
whether Plaintiff brings a claim regarding this tampering under the Eighth Amendment, this Court will address the issue.
Dkt. No. 1, Compl. at ¶ 8.

interference with legal mail in violation of the First Amendment, and supervisory liability.  Dkt. No. 1, Compl. at § 7.  Defendants Joseph McCoy, Superintendent at Cayuga Correctional Facility ("Cayuga"), C.O. Peters, Mr. Costello, Correctional Facility Mail Clerk at Cayuga, and Pamela Quill, Correctional Facility Inmate Accounts at Cayuga, bring a Motion for Summary Judgment. Dkt. No. 46.  Plaintiff opposes the Motion.  Dkt. No. 48.  For the reasons to follow, it is recommended that the Defendants' Motion for Summary Judgment be **granted**.

## I.  FACTS[3]

### A.  Harassment and Food Tampering

On or about March 6, 2001, Plaintiff was transferred to Cayuga from the Elmira Correctional Facility.  Compl. at ¶ 1; Dkt. No. 46, Defs.' 7.1 Statement at ¶ 1.  From the day Plaintiff arrived at Cayuga, Plaintiff alleges C.O. Peters harassed him, in part, by making racial remarks towards Plaintiff.  Compl. at ¶ 2.  On June 11, 2001, Plaintiff alleges he was harassed by Defendant Peters. *Id.* at ¶ 3.  Then, on September 8, 2001, Plaintiff states he was cooking his food and purportedly found C.O. Peters lifting the lid to his food and placing something in the bowl of food.  *Id.* at ¶ 8. Subsequently, Plaintiff alleges that C.O. Peters' verbal harassment continued into the following year.  *Id.* at ¶¶ 11-14.  Plaintiff states that he spoke to Sergeant Locaccio about C.O. Peters and was thereafter transferred away from C.O. Peters' unit.  *Id.* at ¶¶ 15-16.

---

[3] Plaintiff's response to the Motion for Summary Judgment fails to comport with the requirements of the Local Rules for the Northern District of New York.  Plaintiff only submits a brief Response with accompanying Exhibits but did not provide a Supporting Affidavit nor a Statement of Material Facts.  *See* N.D.N.Y.L.R. 7.1(a).  Normally, if no Statement of Material Facts are filed, Defendants' Statement of Material Facts are deemed admitted.  N.D.N.Y.L.R. 7.1(a)(3).  However, Defendants' Statement of Material Facts are extremely brief, as there are only four paragraphs. Therefore, in order to get a sense of the facts that are relevant to this case, this Court will proceed to decide this Motion with the aid of Defendants' Statement of Material Facts with accompanying Exhibits, Plaintiff's Verified Complaint with Exhibits, and Plaintiff's Response to the Motion with accompanying Exhibits.

**B.  Legal Mail**

Plaintiff submits approximately eleven instances when his legal mail was interfered with in some manner.  *Id.* at ¶¶ 19-32.  On or about June 4, 2001, Plaintiff sent certified legal mail, return receipt requested, to Chief Judge Judith Kaye of the New York State Court of Appeals.  *Id.* at ¶ 19; Dkt. No. 48, Pl.'s Mem. of Law, Ex. C, Certified Mail Receipt, stamped June 5, 2001;[4] Dkt. No. 46, Defs.' 7.1 Statement, Ex. C, Certified Mail Receipt, stamped June 5, 2001.  The return receipt for this particular piece of mail was not signed.  Pl.'s Mem. of Law, Ex. C, Certified Mail Receipt, stamped June 5, 2001; Defs.' 7.1 Statement, Ex. C, Certified Mail Receipt, stamped June 5, 2001.  Plaintiff believes this correspondence to a court was interfered and tampered with by the Cayuga "mail clerk's [sic]."  Compl. at ¶ 19.[5]

On August 27, 2001, Plaintiff states that he sent a letter by certified mail, return receipt requested, to the chief motion clerk for the New York State Court of Appeals.  *Id.* at ¶ 20.  This letter apparently contained an appeal from a misbehavior report issued when Plaintiff was incarcerated at the Marcy Correctional Facility.  *Id.* at ¶ 21.  Plaintiff asserts that this letter was also tampered with and delayed by the Cayuga mail clerk, thus resulting in the denial of his motion.  *Id.* at ¶¶ 20 & 21.

On October 28, 2001, Plaintiff states he sent another letter by certified mail with return receipt requested to Chief Judge Kaye.  *Id.* at ¶ 22.  The return receipt was signed by Ms. Mone, Counsel to Chief Judge Judith Kaye, on November 1, 2001.  Pl.'s Mem. of Law, Ex. C, Return

---

[4] Plaintiff did not place his Exhibits to the Response to the Motion in any alphabetical or numerical order. Nevertheless, the Court will utilize Plaintiff's unorthodox method in identifying the Exhibits to the best of its ability.

[5] In addition, on June 5, 2001, Plaintiff also received a letter from an attorney, Adam Thompson, which stated that he did not receive materials apparently sent to him by Plaintiff and that those materials should be resent. Dkt. No. 48, Pl.'s Mem. of Law, Ex. C, Thompson Lt., dated June 5, 2001.

Receipt, dated Nov. 1, 2001; *see also* Pl.'s Mem. of Law, Ex. 10, Mone Lt., dated Mar. 18, 2003.

Plaintiff contends that Defendant Costello tampered with this correspondence by changing the

"Article [number]" without informing Plaintiff. Compl. at ¶ 22.

On or about November 25, 2001, Plaintiff attempted to submit legal papers in order to

request leave to appeal with the New York State Court of Appeals. *Id.* at ¶ 23. However, Plaintiff

claims that the papers were returned to him as Defendant Costello ostensibly told him he did not

have enough money in his account. *Id.* Plaintiff then mailed the papers again, but alleges that on

this occasion the mail clerk changed the "Article number" when Plaintiff was not present. *Id.* at ¶

24. Plaintiff thus declares that his legal correspondence was tampered with and as a result, the New

York State Court of Appeals denied his motion for leave to appeal. *Id.* On November 26, 2001, the

Cayuga Correspondence Office provided Plaintiff with an advisory form which stated that his mail

was returned to him because he did not have enough money in his account to cover the mailing and

that it should be sent back with an advance form. Pl.'s Mem. of Law, Ex. C, Advisory Form, dated

Nov. 26, 2001.[6]

Then on January 2, 2002, Plaintiff alleges he received legal mail from the New York State

Court of Appeals, namely Judge Victoria Graffeo, that was opened by someone at the facility when

Plaintiff was not present. *Id.* at ¶ 26. Plaintiff states that the excuse he received was that the mail

had been opened by mistake. *Id.*

Plaintiff further claims that on May 20, 2002, he mailed some legal materials to the United

States District Court for the Northern District of New York regarding a proceeding against the

---

[6] The form also states that something in addition to the advance form should be sent but the rest of the form is
unreadable as the photocopy provided cut off that specific portion of the instruction.

Marcy Correctional Facility but the correspondence was tampered with by the Cayuga mail clerk. Compl. at ¶ 27.  Plaintiff also asserts that the return receipt was signed by the Cayuga mail clerk, presumably Defendant Costello, instead of the court.  *Id.*  On May 30, 2002, Plaintiff sent a letter to the Honorable David E. Peebles, United States Magistrate Judge for the Northern District of New York, complaining that someone in the facility had signed the return receipt and that he sought a response to his letter.  Pl.'s Mem. of Law, Ex. C, Judge Peebles Lt., dated May 30, 2002.

Later, on September 20, 2002, Plaintiff claims that he was given confidential legal mail that was opened while Plaintiff was not present. *Id.* at ¶ 28.  Plaintiff filed a grievance on October 1, 2002, complaining that his legal mail had been opened. *Id.*[7]  The Superintendent accepted the grievance in part by stating that the letter was mistakenly opened by the senior mail and supply clerk and that the correction officer had logged the fact that Plaintiff refused to accept that piece of legal mail.  Pl.'s Mem. of Law, Ex. 4, Superintendent's Review, dated Oct. 18, 2002.  However, Superintendent McCoy also noted that there was no evidence that there was intentional wrongdoing by either employee.  *Id.*  The CORC also accepted Plaintiff's grievance in part stating that the legal materials from Syracuse University were sent through regular correspondence and when Plaintiff refused to accept the mail, it was returned to the mail room.  Compl., (unnumbered) Ex. 10, CORC Review, dated Nov. 20, 2002.[8]  Furthermore, the mail room clerk then believed it should have been processed through privileged correspondence, sent a note of apology to Plaintiff, and processed the materials through privilege correspondence, indicating the correspondence had been opened in error.

---

[7] A copy of the grievance (No. 13255) filed was not provided nor was the IGRC's recommendation, however, the determinations by both the Superintendent and CORC were submitted pertaining to this grievance.

[8] Plaintiff included Exhibits to his Complaint, however Plaintiff did not provide exhibit numbers for any of the Exhibits provided.  For convenience, the Court has labeled these Exhibits in numerical order.

*Id.* Plaintiff still refused to accept the letter, which was returned to the sender. *Id.* The CORC stated, however, that the materials from Syracuse University were not entitled to privileged correspondence status as "correspondence from all colleges, schools, and universities, . . . should not be considered privileged and would therefore be subject to processing in accordance with Directive #4422." *Id.*

On October 1, 2002, Plaintiff claims that he became aware that Defendants Quill and Costello monetarily penalized him by altering the price of Plaintiff's legal correspondences. Compl. at ¶ 29. The same day, Plaintiff filed a grievance stating that on September 24, 2002, he had sent certified mail and that on September 25, 2002, when he received his certified mail receipt, he noticed he was charged $8.00, including a reduction of $1.48 for the legal mail. Pl.'s Mem. of Law, Exs. 8, Grievance, dated Oct. 1, 2002[9] & C, Return Receipt, dated September 25, 2002. Quintana also claimed in this grievance that his May 20, 2002 letter was altered as the cost for that was $7.55 and that he did not use his free stamps for legal mail at that time, thus the price of the other letter should have been lower. *Id.*, Ex. 8, Grievance, dated Oct. 1, 2002. Superintendent McCoy denied the grievance finding that after a review of the matter, the fees for certified mail with return receipt were raised by the United States Postal Service on June 30, 2002, therefore, Plaintiff was charged the new rate on September 24, 2002, which would account for the forty-five (45) cent increase. *Id.*, Ex. 8, Superintendent's Review, dated Oct. 10, 2002. The CORC upheld the Superintendent's determination and stated the following: 1) Plaintiff did not request to use free legal postage on his May 20, 2002 mail, thus, the package cost was $3.95, the certified charge was $2.10, and the return

---

[9] As there were two grievances filed on October 1, 2002, this particular grievance is numbered 13248-02. In addition, the recommendation of the IGRC is unknown.

receipt charge was $1.55, totaling the $7.55 he was charged; 2) for his September 24, 2002 mailing, Plaintiff was charged $2.47 for the mail ($3.95 minus the free weekly legal postage of $1.48), $2.30 for the certified charge, and a return receipt charge of $1.75, thus totaling $6.52, although Plaintiff may have been confused with the $8.00 listed, which was the total amount the facility provided to the post office, the $6.52 paid by Plaintiff and the $1.48 paid by the facility; and 3) there was no indication that the disbursement was altered by facility staff.  Compl., (unnumbered) Ex. 6, CORC Review, dated Nov. 13, 2002.[10]

Subsequently, on October 28, 2002, Plaintiff alleges that he dispatched a legal package containing appeal records to the Law Office of Adam Thompson but such correspondence was tampered and interfered with by the mail clerk's staff and Mr. Thompson's secretary.  Compl. at ¶ 30.

Plaintiff further asseverates that from July 2002 until November 2002, he filed legal correspondences utilizing free legal stamps to Albany Law School of Union University, Brooklyn Law School, and the offices of twelve attorneys.  *Id.* at ¶ 31.  Plaintiff claims these correspondences were interfered with by the Cayuga mail clerk, presumably Defendant Costello.  *Id.*

Finally, Plaintiff contends that on April 9, 2003, he was called by Correction Officer Porter to receive a package of legal documents from Attorney Thompson, but when he went to retrieve the package, it had already been opened without his presence.  *Id.* at ¶ 32.  Plaintiff states he refused the package and had it returned to the sender.  *Id.*

---

[10] Plaintiff also filed two grievances on October 24, 2002, numbered 13316-02 and 13317-02, regarding postage issues. Pl.'s Mem. of Law, Exs. 8, Grievances, dated Oct. 24, 2002 & 4, Superintendent's Reviews, dated Nov. 15, 2002; Compl., (unnumbered) Exs. 8, CORC Review, dated Dec. 18, 2002 & 9, CORC Review, dated Jan. 15, 2003. However, Plaintiff does not seem to incorporate these incidents into his Complaint. *See* Compl. at ¶¶ 19-32.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the moving party.  FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier

of fact.  *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.

1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities

and draw all reasonable inferences in favor of the nonmoving party.  *Nora Beverages, Inc. v. Perrier*

*Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task at the summary

judgment motion stage of the litigation is carefully limited to discerning whether there are any

genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this

point to issue-finding; it does not extend to issue-resolution."  *Gallo v. Prudential Residential*

*Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## B.  Verbal Harassment

Plaintiff alleges that C.O. Peters verbally harassed him on many occasions because of his

ethnic origin.  Compl. at ¶¶ 2-3, 11, &14, & § 7 at ¶ First Cause of Action.  Defendant Peters asserts

that Plaintiff has failed to state a cause of action as any alleged verbal harassment does not rise to

the level of a constitutional violation.  Dkt. No. 46, Defs.' Mem. of Law at p. 3.

It is well settled law in this circuit that "42 U.S.C. § 1983 is not designed to rectify

harassment or verbal abuse."  *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (citing

*Alnutt v. Cleary*, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996)); *Petway v. City of New York*, 2005

WL 2137805, at *3 (E.D.N.Y. Sept. 2, 2005); *Larocco v. N.Y. City Dep't of Corr.*, 2001 WL

1029044, at *5 (S.D.N.Y. Aug. 31, 2001).  Thus, "verbal harassment or profanity alone,

unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might

seem, does not constitute the violation of any federally protected right and therefore is not

actionable under 42 U.S.C. § 1983."  *Moncrieffe v. Witbeck*, 2000 WL 949457, at *3 (N.D.N.Y.

-9-

June 29, 2000) (quoting *Aziz Zarif Shabazz v. Pico,* 994 F. Supp. 460, 474 (S.D.N.Y. 1998)).

Additionally, "threats do not amount to violations of constitutional rights." *Id.* (quoting *Malsh v.*

*Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)).

In this case, Plaintiff claims that there was verbal harassment but fails to allege any physical

injury as a result. Dkt. No. 46, Defs.' 7.1 Statement, Ex. A, Pl.'s Dep. at p. 13, lines 17-25, p. 14,

lines 2-25, & p. 15, lines 2-6; *see also Aziz Zarif Shabazz v. Pico*, 994 F. Supp. at 474 (noting that

there was no physical injury accompanied with the verbal taunting and therefore no constitutional

violation was alleged). As there is no injury, Plaintiff has not stated a claim that would constitute

the violation of any federally protected right, therefore, Plaintiff's claim is not actionable under 42

U.S.C. § 1983.

Accordingly, it is recommended that the Motion for Summary Judgment be **granted**.

### C. Food Tampering

Plaintiff claims that on September 8, 2001, while Plaintiff was cooking his food, Defendant

Peters lifted the lid and attempted to place something in the food. Compl. at ¶ 8.

The Eighth Amendment places a duty upon prison officials to ensure that prisoners receive

adequate food. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In that context, prisoners are to be

provided with "nutritionally adequate food that is prepared and served under conditions which do

not present an immediate danger to the health and well being of the inmates who consume it."

*Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (citation omitted); *see also Lunney v. Brureton*,

2005 WL 121720, at *6 (S.D.N.Y. Jan. 21, 2005). Consequently, "[d]epriving an inmate of food or

serving him contaminated food may constitute a violation of the Eighth Amendment." *Moncrieffe v.*

*Witbeck*, 2000 WL 949457, at *6 (N.D.N.Y. June 29, 2000) (citing *Robles v. Coughlin*, 725 F.2d at

15).

Here, Plaintiff was not deprived of food or served a contaminated meal.  Plaintiff states C.O. Peters did not get a chance to place anything in his bowl of food because Plaintiff had surprised him and that in any event, he did not eat the food "because you never know."  Defs.' 7.1 Statement, Ex. A, Pl.'s Dep. at p. 17, lines 18-25.  There is no evidence that Plaintiff did not receive nutritionally adequate food or that the food was prepared or served in a manner that presented an immediate danger to Plaintiff's health and well being.  Plaintiff had prepared his own food and was going to serve himself.  *Id.* at p. 15, lines 11-25, & p. 16, lines 2-19.  Plaintiff's claim is speculative and does not rise to the level of a constitutional violation.

Therefore, it is recommended that the Motion for Summary Judgment be **granted** on this issue.

### D.  Supervisory Liability

Plaintiff alleges that Superintendent McCoy failed to take disciplinary action against those in his employ, namely C.O. Peters, and therefore is liable.  Compl. at § 7 at ¶ Fourth Cause of Action. Plaintiff also states that Superintendent McCoy is responsible under the theory of *respondeat superior* because he is the Superintendent and directly responsible for all persons under his charge. Dkt. No. 48, Pl.'s Resp. at p. 1; Defs.' 7.1 Statement, Ex. A, Pl.'s Dep. at p. 23, lines 2-9.

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).  However, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement. Therefore, a prison official may not be found liable for a constitutional violation merely because of

the acts of those under his control." *Kinch v. Artuz*, 1997 WL 576038, at \*2 (S.D.N.Y. Sept. 15,

1997) (emphasis in original) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v.

Smith*, 21 F.3d at 501) (further citations omitted).  Nevertheless, if a plaintiff seeks to bring a § 1983

action for supervisory liability, there needs to be a showing of personal involvement by the

supervisor.  *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  "'Absent some personal

involvement by [the supervisory official] in the allegedly unlawful conduct of his subordinates,' he

cannot be liable under section 1983."  *Id.* at 144-45 (quoting *Gill v. Mooney*, 824 F.2d 192, 196 (2d

Cir. 1987)) (alterations in original).  However, liability on the part of the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional
> violation, 2) failure to remedy a wrong after being informed through a report or appeal,
> 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional
> violation, or allowing such a policy or custom to continue, 4) grossly negligent
> supervision of subordinates who committed a violation, or 5) failure to act on
> information indicating that unconstitutional acts were occurring.

*Id.* at 145 (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)) (further citations omitted).

Here, Plaintiff states that Defendant McCoy is liable based on *respondeat superior*.  Since a

claim cannot stand under this theory, Plaintiff's claim must fail.  Even if Plaintiff were to assert that

there was grossly negligent supervision of C.O. Peters, who, in Plaintiff's estimation, committed

constitutional violations, the claim against Superintendent McCoy could not stand.  *See* Compl. at §

7 at ¶ Fourth Cause of Action.  Plaintiff states that Superintendent McCoy did not remedy the

situation with C.O. Peters after grievances were reviewed by Defendant McCoy.  Defs.' 7.1

Statement, Ex. A, Pl.'s Dep. at p. 23, lines 7-23.  However, the claims against C.O. Peters are that

he verbally harassed Plaintiff and tampered with his food.  Both those claims have been disposed of

above as this Court has found that there were no constitutional violations.  Therefore, since there are

no allegations of personal involvement by Defendant McCoy and because no constitutional

*-12-*

violations occurred, the claim for supervisory liability must fail.

Thus, it is recommended that the Motion for Summary Judgment be **granted** on the supervisory liability claim.

### E.  Legal Mail

Plaintiff alleges that Defendant Costello interfered with his legal mail on several occasions and that Defendant Quill aided in that effort by altering the price of the mail.  Compl. at ¶¶ 19-32 & § 7 at ¶ Third Cause of Action; Defs.' 7.1 Statement, Ex. A, Pl.'s Dep. at p. 38, lines 15-25, & p. 39, line 2.

"Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution."  *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).  In order to state a claim for lack of access to the courts due to interference with legal mail, "an inmate must allege that a defendant's deliberate and malicious interference actually impeded his access to the court or prejudiced an existing action."  *Cancel v. Goord*, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) (citing *Lewis v. Casey*, 518 U.S. 343, 349 (1996)).  However, "[a] delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation."  *Cancel v. Goord*, 2001 WL 303713, at *5 (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) & *Jones v. Smith*, 784 F.2d 149, 151-52 (2d Cir. 1986)).  But, if an adverse judgment to an "otherwise meritorious" motion resulted from defendants' delay, then a § 1983 claim is stated.  *Id.*

Furthermore, a prisoner maintains the right to the flow of incoming and outgoing mail as protected by the First Amendment.  *Davis v. Goord*, 320 F.3d at 351 (citing, *inter alia*, *Heimerle v. Attorney General,* 753 F.2d 10, 12-13 (2d Cir. 1985)).  Any "[r]estrictions on prisoners' mail are

justified only if they 'further[ ] one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.'" *Id.* (quoting *Washington v. James,* 782 F.2d 1134, 1139 (2d Cir. 1986)) (alterations in original).  Therefore, "[i]n balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *Id.* (citing, *inter alia*, *Thornburgh v. Abbott,* 490 U.S. 401, 413 (1989)).  Although an inmate has the right to be there when his legal mail is opened, an isolated event of tampering will be insufficient to allege a constitutional violation unless the inmate can show "that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'" *Id.* (quoting *Cancel v. Goord,* 2001 WL 303713, at *6) and citing *Wolff v. McDonnell,* 418 U.S. 539, 574-76 (1974) & *Morgan v. Montanye,* 516 F.2d 1367, 1371 (2d Cir. 1975)); *see also Gill v. Riddick*, 2005 WL 755745, at *15 (N.D.N.Y. Mar. 31, 2005).  The Second Circuit has also stated that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Davis v. Goord*, 320 F.3d at 351 (citing *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986) & noting that "district courts have generally required specific allegations of invidious intent or of actual harm where the incidents of tampering are few and thus the implication of an actionable violation is not obvious on its face" (citations omitted)).

Plaintiff states the first incident when Defendant Costello interfered with his legal mail was on June 4, 2001.  Compl. at ¶ 19.  Plaintiff claims he sent documents to Chief Judge Kaye at the

New York State Court of Appeals relating to an appeal of his criminal case, however, Plaintiff

contradicts himself by later stating that this letter was in regards to a federal *habeas corpus* petition.

*Compare* Compl. at ¶ 14 *with* Defs.' 7.1 Statement, Ex. A, Pl.'s Dep. at p. 24, lines 6-23, & p. 29,

lines 16-24.  Plaintiff alleges his mail was opened, the return receipt was sent to him from someone

at the prison, and the person responsible for problems with the return receipt is Defendant Costello

because he is the mail clerk and is in charge of the mail.  *Id.*, Ex. A, Pl.'s Dep. at p. 25, lines 3-9, p.

26, lines 10-20, & p. 27, lines 8-14.  However, Plaintiff affirms that this piece of legal mail was

received by Chief Judge Kaye but that "it would get there incomplete."  *Id.*, Ex. A, Pl.'s Dep. at p.

25, lines 10-19.  Plaintiff states he knows it was incomplete because of the replies he received,

though he was not sure if he actually received a reply from the court in regards to this particular

mailing.  *Id.*, Ex. A, Pl.'s Dep. at pp. 25, lines 20-25, & 26, lines 2-4.  Plaintiff also notes he never

witnessed Defendant Costello tamper with the mailing.  *Id.*, Ex. A, Pl.'s Dep. at p. 27, lines 15-17.

Here, Plaintiff has not put forth any evidence to show that the mail was tampered with in any

fashion.  Plaintiff submits a copy of the return receipt for which he claims was signed by someone

other than court personnel but which in fact contains no signature.  Pl.'s Mem. of Law, Ex. C,

Certified Mail Receipt, stamped June 5, 2001; Defs.' 7.1 Statement, Ex. C, Certified Mail Receipt,

stamped June 5, 2001.  Nevertheless, he acknowledges that the materials did reach the court, albeit

incomplete in his view, however, Plaintiff does not provide proof to show that the materials that did

reach the court were in fact incomplete.  Moreover, Quintana has not shown that Defendant Costello

possessed a deliberate and malicious mindset to interfere with his mail or that any interference

actually impeded his access to the court, as Plaintiff notes the papers reached their destination, nor

was there prejudice to an existing action, as Plaintiff makes no further reference to his state court

"appeal" and presumably the *habeas corpus* petition Plaintiff refers to was determined on the merits with no mention of any incomplete filings.[11]  *See* Defs.' 7.1 Statement, Ex. A, Pl.'s Dep. at p. 29, lines 8-24.

In regards to the August 27, 2001 legal mail, Plaintiff claims this letter was also tampered with and delayed by Defendant Costello, resulting in the denial of his Article 78 proceeding.  *Id.*, Ex. A, Pl.'s Dep. at p. 27, lines 18-22, p. 28, lines 3-25, & p. 29, lines 2-7.  The only reason Plaintiff claims that Defendant Costello was involved is due to the fact that Costello is in charge of the mail.  *Id.*, Ex. A, Pl.'s Dep. at p. 29, line 25, & p. 30, lines 2-7.  In any event, Plaintiff states that this letter directly related to another court case that was dismissed for failure to exhaust his administrative remedies.[12]  *Id.*, Ex. A, Pl.'s Dep. at p. 29, lines 3-7.  Plaintiff has failed to provide any evidence to show that Costello actually interfered with his mail or that any interference actually impeded his access to the court, as a mere delay in communicating with the court would not rise to the level of a constitutional violation, or that he suffered prejudice on any existing action as a result, since the case was dismissed for failure to exhaust and not for untimely filings.

The third incident of tampering claimed by Plaintiff concerns legal mail sent on October 28, 2001, to Chief Judge Kaye of the New York State Court of Appeals.  Plaintiff declares that Defendant Costello, again responsible as the mail clerk, interfered with this mail by changing the Article number.  *Id.*, Ex. A, Pl.'s Dep. at p. 30, lines 8-17.  Plaintiff states that the mail was returned

---

[11] The Court believes the *habeas corpus* petition referred to by Plaintiff is *Quintana v. McCoy*, 2006 WL 300470 (S.D.N.Y. Feb. 6, 2006), as it is a federal *habeas* petition based upon his state conviction.  *See* Defs.' 7.1 Statement, Ex. A, Pl.'s Dep. at p. 29, lines 8-24.

[12] This statement is in direct contradiction to the claim made in the Complaint regarding this August 27th letter.  *Compare* Defs.' 7.1 Statement, Ex. A, Pl.'s Dep. at p. 29, lines 3-7 *with* Compl. at ¶¶ 20 & 21.  The Complaint states that this letter was sent to the New York State Court of Appeals, not the United States District Court, where the case involving his failure to exhaust was determined.  Compl. at ¶¶ 20 & 21.

and he had to re-send the letter at which point it reached its intended destination. *Id.*, Ex. A, Pl.'s

Dep. at p. 30, lines 18-24. This piece of mail also related to his criminal case. *Id.*, Ex. A, Pl.'s Dep.

at p. 30, line 25, & p. 31, lines 2-5. Nevertheless, the Court is unaware of how a change in the

Article number would constitute interference or impede the mail from arriving at its destination.

Once again, Plaintiff has failed to establish first that any of Defendant Costello's actions were done

deliberately and maliciously, since Plaintiff seems to hold him responsible solely due to his position,

or that the interference actually impeded his access to the court, as the return receipt was signed by

Ms. Malone, Counsel to Chief Judge Kaye of the New York State Court of Appeals, on November

1, 2001, approximately four days after the letter was sent. Pl.'s Mem. of Law, Ex. C, Return

Receipt, dated Nov. 1, 2001. Nor has Plaintiff put forth any evidence to show that any interference

prejudiced an existing action.

The next incident of alleged interference occurred on November 25, 2001, when Plaintiff

claims Defendant Costello stated to him that there was not enough money in his account, thus his

legal papers were not mailed. Quintana states when he mailed the papers a second time, the Article

number was again changed. Plaintiff asserts that the papers represented his motion for leave to

appeal to the New York State Court of Appeals in regards to his criminal case and that due to the

interference, the motion was denied. Defs.' 7.1 Statement, Ex. A, Pl.'s Dep. at p. 31, lines 6-22;

Compl. at ¶ 24. Nonetheless, when Plaintiff resent the papers, they reached their destination. Defs.'

7.1 Statement, Ex. A, Pl.'s Dep. at p. 31, lines 21-24. Although Plaintiff makes the claim that the

combination of the lack of funds in the account and the change in the Article number caused a delay

resulting in the denial of his leave to appeal, Plaintiff has failed to present any evidence that

Defendant Costello interfered with the mail deliberately and maliciously which actually impeded his

*-17-*

access to the court or prejudiced an existing action.  Plaintiff admits that the papers were received

by the court but fails to show how an apparent delay actually caused prejudice to an existing action.

It does not appear as if the New York State Court of Appeals denied Plaintiff's motion as untimely.

*See People v. Quintana*, 764 N.E.2d 406 (N.Y. Ct. of App. 2001) (filed by Quintana's attorney);

*People v. Quintana*, 771 N.E.2d 842 (N.Y. Ct. of App. 2002) (supplemental leave filed by Plaintiff

*pro se*).  Furthermore, Defendant Costello merely stated there were insufficient funds to send the

mail and that Quintana could send back the legal mail to the mail room with an advance form.  Pl.'s

Mem. of Law, Ex. C, Advisory Form, dated Nov. 26, 2001.[13]

Another incident of tampering claimed by Plaintiff was in regards to legal materials mailed

to the United States District Court for the Northern District of New York on May 20, 2002.

Plaintiff asserts that the mail was tampered with when Defendant Costello wrongfully signed the

return receipt instead of the court, even though the material arrived at the court.  Defs.' 7.1

Statement, Ex. A, Pl.'s Dep. at p. 34, lines 5-14.  Despite the claim, Plaintiff provides no evidence

that a signature on the return receipt was forged.  Plaintiff submits to the Court several copies of

different signed return receipts but none for this particular mailing.  *See* Pl.'s Mem. of Law, Ex. C.

It is not credible that the return receipt would be signed by the facility yet the legal papers would

still reach the court.  Plaintiff also states that documents were taken out of his mail, however, he

does not know what papers were taken out and only believes the papers were incomplete because

the "process would prolong itself."  Defs.' 7.1 Statement, Ex. A, Pl.'s Dep. at p. 34, lines 11-22.

---

[13] Plaintiff claims that even if there was a lack of funds in his account, money should have been taken from Plaintiff's facility payroll and the mail should have been sent.  Compl. at ¶ 24.  However, Plaintiff does not cite to any rule or regulation that states that particular proposition.  *Id.*  Nevertheless, pursuant to N.Y. COMP. CODES R. & REGS. tit. 7, § 721.3(a)(3)(iv), if there are insufficient funds, an advance request shall be approved and Plaintiff was in fact asked to fill out the advance form.

Plaintiff has not submitted any proof to validate his theory.  In any event, Plaintiff has not

established by any means that Costello deliberately and maliciously interfered with his mail or that

any interference actually impeded his access to the court, since the package arrived at the court, or

that he suffered prejudice any existing action as a result.

Plaintiff next claims that on October 1, 2002, he became aware of the fact that Defendants

Quill and Costello were overcharging him for sending certified mail with a return receipt for his

legal mailings on two occasions, September 24, 2002 and May 20, 2002.  Plaintiff claims that he

would weigh his packages in the library beforehand and based on that, he believes that Quill and

Costello altered the price.  *Id.*, Ex. A, Pl.'s Dep. at p. 35, lines 2-14.  However, Plaintiff's confusion

as to the difference in price between the two dates is easily corrected by the detailed accounting

provided by the Superintendent and CORC.  *See supra* pp. 6-7.  As for the increase cost between

May and September 2002, the United States Postal Service, and not Defendants Quill and Costello,

is responsible for the price differential for the cost of certified mail with return receipt mailings

since the price was raised in June 2002.  Pl.'s Mem. of Law, Ex. 8, Superintendent's Review, dated

Oct. 10, 2002.  Moreover, the price difference can also be equated to the fact that Plaintiff did not

use his free legal postage on the May 20, 2002 mailing whereas he exercised that option for the

September 24, 2002 mailing.  Thus, the prices of the legal mailings were not altered by Defendants

Quill and Costello, but were merely reflections of Plaintiff's own choices and the government's

increase in postage.  Any perceived restriction on his legal mailings by Plaintiff was non-existent as

the Defendants were not attempting to prevent or interfere with the mailings.

In regards to the October 28, 2002 allegation, Plaintiff contends that legal materials sent to

Attorney Thompson were interfered and tampered with as the return receipt did not reach the post

office and the price for the mailing was altered.  As for the return receipt, a copy provided to the

Court clearly shows the signature of Eileen Chavez, the secretary for Attorney Thompson, on the

return receipt with a date of October 31, 2002.  Pl.'s Mem. of Law, Ex. C, Return Receipt, dated

Oct. 31, 2002.  Although Plaintiff claims he is not sure whether the package ever reached Mr.

Thompson's office, the return receipt evidences otherwise.  Defs.' 7.1 Statement, Ex. A, Pl.'s Dep.

at p. 36, lines 18-20.  In addition, Plaintiff does not expand upon his general claim that the price of

the certified mail was altered.  Quintana fails to state how the price was altered, what the price of

the certified mail actually was, or provide any documentation regarding this occurrence.

Furthermore, Plaintiff only alleges that the tampering/interference involved "the mail clerk's staff,"

but Plaintiff fails to name any particular individual responsible for the event.  Plaintiff has not

established in any capacity that there was any interference or tampering with his mail.

　　　　Plaintiff's next claim encompasses letters sent to various schools and attorneys from July to

November 2002.  Plaintiff avows that Defendant Costello, due to his position, was responsible for

interference with the mail because they would never reach their intended targets as evidenced by the

fact that Plaintiff did not receive answers to his letters.  *Id.*, Ex. A, Pl.'s Dep. at p. 37, lines 14-25, &

p. 38, lines 9-14.  There is, however, no evidence to substantiate Plaintiff's claims.  A non-response

from a school or attorney does not translate into interference by the facility as sadly sometimes there

is simply no response provided to letters of inquiry.  Quintana has not shown that there was any

interference with his outgoing legal mailings that would compromise his First Amendment rights.

　　　　Finally, Plaintiff claims that on three occasions, his legal mail was opened when he was not

present.  Plaintiff alleges that: 1) on January 2, 2002, legal mail sent to him from the New York

State Court of Appeals was opened purportedly by mistake; 2) on September 20, 2002, confidential

mail was again opened allegedly by mistake in Plaintiff's absence; and 3) on April 9, 2003, a legal

package sent to Plaintiff from his attorney was opened without his presence.  As for the January 2,

2002 incident, Plaintiff states that the mail was wrongly opened and that he was informed through

the grievance process that it was opened by mistake.  *Id.*, Ex. A, Pl.'s Dep. at p. 32, lines 5-25, & p.

33, line 2.  However, Plaintiff does not name the person who "mistakenly" opened the mail, though

in the grievance filed he claims it was tampered with by someone from the "Mail Clerk's

administration[.]"  Pl.'s Mem. of Law, Ex. 9, Grievance, dated Jan. 17, 2002.  This general

allegation against an unknown individual cannot stand and furthermore, there is no evidence

provided to show that the mail was in fact tampered with and opened.[14]  In terms of the September

20, 2002 legal mail that was given to Plaintiff in an opened state, it is acknowledged that it was

mistakenly opened by the senior mail and supply clerk.  Pl.'s Mem. of Law, Ex. 4, Superintendent's

Review, dated Oct. 18, 2002.  It was further noted that even though the CORC found that the

package from Syracuse University was not privileged and therefore could have been opened, the

mail clerk sent a note of apology and reprocessed the materials through privileged correspondence

procedures.  Although once again Defendant Costello is not specifically named as having opened

the package, it may be feasible that he would be the mail room clerk referred to by the

Superintendent and CORC.  Nevertheless, this one instance of opening of mail would not amount to

a violation unless there was regular and unjustifiable interference.  Plaintiff claims another instance

of legal mail that was opened in Plaintiff's absence.  On April 9, 2003, Plaintiff received a package

from Attorney Thompson that was also presented to Plaintiff in an opened state.  Plaintiff seemingly

---

[14] The Court is unable to fully comprehend the circumstances surrounding this event as Plaintiff did provide a copy of his grievance but did not provide a copy of the IGRC, Superintendent, or CORC's determinations.

*-21-*

blames Defendant Costello and the correspondence staff for the condition of the package.  Pl.'s Mem. of Law, Ex. 4, Superintendent's Review, dated Apr. 25, 2003, & Appeal (attached to the Superintendent's Review); Compl., (unnumbered) Ex. 2, CORC Review, dated June 12, 2003. However, both the Superintendent and CORC stated that the envelope was received in that condition and a letter from the law firm accompanied the package noting as much.  Pl.'s Mem. of Law, Ex. 4, Superintendent's Review, dated Apr. 25, 2003; Compl., (unnumbered) Ex. 2, CORC Review, dated June 12, 2003.  Despite the allegation, there is no evidence to suggest that the package was tampered with by the mail clerk or the staff.  Even drawing all inferences in favor of Plaintiff and assuming that there were in fact these two instances of tampering by Costello, the only named Defendant of the entire mail room staff, the two incidents do not suggest in the slightest an ongoing practice of censorship, that Plaintiff's right of access to the courts was chilled, or that his legal representation was impaired.  Neither is there evidence of an intent to interfere and/or tamper with Quintana's legal mail nor has Plaintiff shown there was actual harm resulting from these two incidents.  Plaintiff received and sent his legal mail, though not to Plaintiff's liking, and in fact returned the September 20, 2002 and April 9, 2003 packages to the sender because they had been opened.  Furthermore, there does not seem to be any regular and unjustifiable interference with Plaintiff's legal mail as demonstrated from the evidence presented.  Irrespective of the claims pursued, the alleged events would not rise to the level of a constitutional violation.

It must be noted at this stage that Plaintiff has failed to allege any personal involvement by Defendant Costello in regards to the mailings of June 4, 2001, August 27, 2001, October 28, 2001, January 2, 2002, October 1, 2002, October 28, 2002, and July 2002 to November 2002.  Plaintiff essentially charges that because Defendant Costello is the mail clerk and responsible for his staff,

that he too is responsible for any interference or tampering alleged by Plaintiff.  However, as noted previously, personal involvement is a prerequisite to an award of damages under § 1983 and a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control under the doctrine of *respondeat superior*.  *See Wright v. Smith*, 21 F.3d at 501; *Kinch v. Artuz*, 1997 WL 576038, at *2.  Plaintiff has not stated at any time that Defendant Costello, himself, actually interfered or tampered with these specific mailings.  Therefore, because Plaintiff has not established any interference and/or tampering with his legal mail, he has also failed to allege any personal involvement regarding those claims.

Therefore, it is recommended that the Motion for Summary Judgment be **granted**.[15]

## F.  Fourteenth Amendment Claim

As to Plaintiff's fifth cause of action, Plaintiff states Hollenbeck and English denied him the right to file grievances.  Compl. at § 7 at ¶ Fifth Cause of Action.  Plaintiff alleges that Mr. Hollenbeck, "ex Cayuga Correctional Facility IGP Supervisor tried to intimidate the [P]laintiff, when [P]laintiff was trying to process the Marcy Correctional Facility grievance to comply with the court mandate to exhaust . . . administrative remedies."  Compl. at ¶ 36.  Plaintiff further claims that Mr. R. English, an IGP Supervisor, attempted to intimidate Plaintiff with a misbehavior report and

---

[15] Additionally, Plaintiff, in his Response to the Motion, now seeks to state a cause of action for retaliation against "Defendant's [sic]."  Pl.'s Resp. at p. 3.  Plaintiff does specifically state which Defendants retaliated against him but the claimed conduct for which the retaliation occurred was his "correspondence to the Courts" and grievances filed.  *Id.*  Plaintiff further contends that the adverse action taken was the interference with his legal mail.  *Id.*  Therefore, Plaintiff's claim seems to be against Defendant Costello.  Nevertheless, the Court notes that opposition papers are not the proper vehicle to instill new causes of action.  *See In re Private Capital Partners, Inc.*, 139 B.R. 120, 124-25 (Bankr. S.D.N.Y. 1992) (citing cases for the proposition that a plaintiff's attempt to amend his complaint by instituting new causes of action in his opposition papers to defendants' dispositive motion is in direct contravention of and amounted to an attempt to circumvent the Federal Rules of Civil Procedure, namely Rule 15(a)).  If Plaintiff wishes to supplement or amend his Amended Complaint, he must follow the proper procedural mechanisms set forth in the Federal Rules of Civil Procedure and the Local Rules of Practice for the Northern District of New York.  This Court will not construe Plaintiff's submission as a motion to amend.

refused to process a grievance dated July 10, 2003, submitted by Plaintiff.  *Id.* at ¶ 37.

In this case, however, Hollenbeck and English are not parties to this action.  In reviewing Plaintiff's Complaint, the Court notes that Plaintiff has not named either Hollenbeck or English as Defendants nor do their names appear in the caption of the case.  *See id.* at p. 1 and § 3.  Furthermore, in light of the fact that Plaintiff omitted these individuals as named parties, summonses were never issued and they were never served with process.  *See* Dkt. Entry, dated Sept. 16, 2003.  Thus, the Court has not obtained jurisdiction over these individuals.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Motion for Summary Judgment (Dkt. No. 46) be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   September 7, 2006
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge